**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

**THE ADVOCATES FOR HUMAN RIGHTS**,
330 Second Avenue South, #800
Minneapolis, MN 55401

**MORGAN JENKINS**,
16709 Kamalin Ct.,
Clermont, FL 34715

**CARMEN MARIA REY CALDAS**,
9 Vose Ave., Apt. 11
South Orange, NJ

**BONNIE BYLAND**,
2040 Bayou Paul Lane
St. Gabriel, Louisiana. 70776

**NANCY GRUSH**,
1951 Wisteria Street
Baton Rouge, LA

**BRYANNA SIGUENZA**,
465 Rose Ave., Apt. 5
Long Beach, CA 90802

**MAGGIE BERRY**,
6006 25th St Cir. N.
Oakdale MN, 55128

**JOHN LLOYD**,
1035 Scoville Ave.
Oak Park, IL 60304

*Plaintiffs*,

v.

**TODD BLANCHE, IN HIS CAPACITY AS ACTING ATTORNEY GENERAL OF THE UNITED STATES DEPARTMENT OF JUSTICE**,

Civil Action No. 1-26-cv-00865-RC

**RENEWED MOTION FOR PRELIMINARY INJUNCTION OR STAY AND MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION**

950 Pennsylvania Avenue NW )
Washington, DC 20530 )
)
**DAREN K. MARGOLIN, IN HIS** )
**CAPACITY AS DIRECTOR,** )
**EXECUTIVE OFFICE FOR** )
**IMMIGRATION REVIEW OF THE** )
**DEPARTMENT OF JUSTICE,** )
5107 Leesburg Pike )
Falls Church, VA 22041 )
)
**HON. TERESA L. RILEY, IN HER** )
**CAPACITY AS CHIEF** )
**IMMIGRATION JUDGE, U.S,** )
**IMMIGRATION COURT**, )
5107 Leesburg Pike )
Falls Church, VA 22041 )
)
And )
**HON. ERIC L. DILLOW, IN HIS** )
**CAPACITY AS ASSISTANT CHIEF** )
**IMMIGRATION JUDGE** )
**U.S. IMMIGRATION COURT**, )
Bishop Henry Whipple Federal Building )
1 Federal Drive, Suite 1850 )
Fort Snelling, MN 55111 )
)
*Defendants*

# [PROPOSED] ORDER

Upon consideration of Plaintiffs' Motion for Preliminary Injunction and Stay (the "Motion"), the declarations and evidence in support thereof, any opposition and reply thereto, and the entire record herein, this Court finds that:

Defendants have unlawfully impeded and restricted press and public access to the immigration courts of the United States by closing the courts to the press and the public without notice or explanation, or where explanations were offered, by explanations inconsistent with their own regulations, by barring public access to hearings held over Webex[1] without explanation or on the invalid basis that Webex access was available only to parties, by imposing unreasonable, unexplained and unannounced restrictions on entry to and exit from the immigration courtrooms, by imposing unexplained limitations on access to the waiting areas outside courtrooms, and by limiting access to otherwise public information about the location and start times of immigration court hearings and cases, or imposing bars on observers taking written notes, again without explanation. These limitations and restrictions go beyond those limitations permitted under the Department of Justice's own regulations (8 C.F.R. § 1003.27 and 8 C.F.R. § 1240.10(b)) and the First Amendment rights guaranteeing press and public access to proceedings before those courts, which have historically been open to the public and the press.

The above-described restrictions on access are definitive in effect, not tentative or interlocutory, and they determine rights—in this case the right to observe immigration court

[1] By "hearings held over Webex," this Court means hearings in which the immigration judge, the respondent, counsel for the respondent or for the government, or a witness is permitted to participate via Webex, whether or not there is an in-person option for the public or press to attend. Consistent with Defendants' own longstanding interpretation of their own regulations, such Webex hearings must be open to the public and the press, subject only to the same limited grounds for closure permitted for in-person hearings.

proceedings under the agency's own regulations—and thus constitute final agency action under the Administrative Procedure Act. *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997); *Pechter v. Lyons*, 441 F. Supp. 115, 118–19 (S.D.N.Y 1977) (holding that immigration judge's reasons for denial of public access to deportation proceeding were abuse of discretion and that decision was reviewable because agency regulations lacked "internal avenue for observers to appeal closure decisions" and because an internal agency review process to review an order closing a hearing would come too late).

By Defendants' own account and admissions, hearings held over Webex, i.e, hearings in which the immigration judge, the respondent, attorneys for the respondent or the government, or witnesses are allowed to participate via Webex, are also open to the public and the press via Webex, subject only to the same limitations applicable to in person attendance. In the words of an assistant chief immigration judge in a sworn May, 2026 declaration, "Subject to the same regulations, the general public can also observe hearings conducted remotely by joining the remote hearing." Declaration of John Burns, *Arias v. U.S. Immigr. & Customs Enforcement*, Civil Action No. 1:26-2130-CM (S.D.N.Y.) (filed May 12, 2026), Ex. 75 ¶ 7. Yet EOIR has distributed "Fact Sheets" in November 2025 and February 2026 to all immigration courts directing that Webex access is only for parties. Fact Sheet, Observing Immigration Court Hearings (Feb. 2026), https://www.justice.gov/eoir/media/1416861/dl?inline. Immigration judges across the country have cited these fact sheets to exclude the public from hearings held over Webex where they have offered any reason at all for excluding the public from such proceedings.[2] These closures of Webex

[2] *See, e.g.*, Declaration of Shane Ellison, Ex. 50 ¶¶ 8-9 (IJ citing "new EOIR policy" requiring in-person observation); Declaration of Michele Cantara, Ex. 48 ¶¶ 9-11 (multiple Chelmsford IJs citing EOIR guidance as basis for barring Webex observers); Declaration of Amy Lange, Ex. 1, ¶ 80 (Judge Taylor stating "WebEx is reserved for parties of the case").

access to the public are unlawful and can be traced directly to the EOIR Fact Sheets, whether those documents are viewed as directives to contravene the Defendants' own regulations or as a new policy directive adopted without prior notice and comment and without explanation, all in direct contravention of the long history and tradition of presumptively open public and press access to immigration courts.

This Court also specifically finds that on thousands of occasions Defendants have closed in-person immigration proceedings and immigration hearings held over Webex, both presumptively open to the public, with no or invalid explanations and that these closures were therefore arbitrary and capricious and in violation both of Plaintiffs' rights under Defendants' own regulations and of Plaintiffs' First Amendment rights. The Court further finds that Plaintiffs have made the clear showing that they have standing to seek injunctive relief because these violations were so frequent that they are likely to recur without a preliminary injunction or stay. For hearings held over Webex, the Defendants must give adequate and reasonable notice of such hearings and permit and facilitate virtual attendance by the interested members of the press and the public regardless of the physical location of interested members of the press or the public.

It can also reasonably be inferred that DOJ and EOIR, which supervise the immigration courts and set operational policies, have directed that the restrictions be put in place for in person observation. The common nature of the closures and barriers to access – locked courtroom doors, lack of posting of hearing schedules, prevention of note taking, the use of "mega-master" calendar proceedings that crowd out public observers – are too similar to be ascribed to chance or mere coincidence. *See, e.g.*, *Dep't of Com. v. New York*, 588 U.S. 752 (2019) (rejecting as "contrived" Commerce Secretary's explanation for agency action at odds with the record); *see also Nat'l Treasury Employees Union v Vought*, 149 F.4th 762, 807 (D.C. Cir. 2025) (Pillard, dissenting),

*vacated on other grounds and reh'g en banc granted*, No. 25-5091 (D.C. Cir. Dec. 17, 2025) (observing that even without formal written documents final agency action is defined by the action the agency takes and that "courts may infer from circumstantial evidence that there's a decision.") (internal quotations omitted).

To qualify for preliminary injunctive relief a plaintiff must show that (1) he or she is likely to succeed on the merits; (2) he or she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his or her favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008). Where the government is a party the third and four factors merge. *Gomez v. Trump*, 485 F. Supp. 3d 145, 168 (D.D.C. 2020). For purposes of this motion, Plaintiffs accept that the same standards apply to both motions for injunctive relief and for stay under APA section 705. *See, e.g., id.* Plaintiffs have satisfied each of the four factors required for a preliminary injunction or stay:

**Likelihood of success on the merits**.

The Plaintiffs are likely to succeed on the merits of Count I and IV of their complaint, their claims that these restrictions on press and public access to immigration court proceedings are arbitrary and capricious and in violation of constitutional rights and therefore unlawful under the Administrative Procedure Act, 5 U.S.C. §706(2)(A), (C)–(D)). Defendants' own regulations (8 C.F.R. § 1003.27) require that "[a]ll hearings, other than exclusion hearings, shall be open to the public" except in enumerated circumstances, none of which apply to the restrictions described above. It is a fundamental principle of administrative law that an agency is bound to follow its own lawfully promulgated regulations and apply them uniformly. *Morton v. Ruiz*, 415 U.S. 199, 231–32 (1974); *INS v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996)*;see also Reuters Ltd. v. FCC*, 781 F.2d 936, 950 (D.C. Cir. 1986) ("[I]t is elementary that an agency must adhere to its own rules and

regulations.”). Where, as here, agencies depart without acknowledgement or explanation from their own regulations and policies, their actions are arbitrary and capricious. *FCC v. Fox Television Stations, Inc*., 556 U.S. 502, 515 (2009). Defendants’ courtroom access regulations, moreover, are grounded in First Amendment protections and a long-standing tradition of public access. *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 704–05, 711 (6th Cir. 2002); *see also Press-Enterprise Co. v. Super. Ct. of Cal.*, 478 U.S. 1, 13–14 (1986) (noting that even preliminary hearings “cannot be closed unless specific, on the record findings are made demonstrating that ‘closure is essential to preserve higher values and is narrowly tailored to serve that interest’”) (quoting *Press-Enter. Co. v. Super. Ct. of Cal., Riverside Cnty.*, 464 U.S. 501, 510 (1984)); *Pechter v. Lyons*, 441 F. Supp. 115 (S.D.N.Y 1977) (determining it was an abuse of discretion for an immigration judge to exclude members of the public from an immigration court proceeding). Thus, the Defendants’ access limitations and restrictions run contrary to Plaintiffs’ constitutional right. 5 U.S.C. §706(2). Along with binding federal regulations guaranteeing presumptive public access, the First Amendment—along with the common law—safeguards a presumptive right to access judicial proceedings. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 577–80 (1980).

Where, as here, Plaintiffs seek prospective injunctive/stay relief, Plaintiffs must make a “clear showing” that past violations of Defendants’ own regulations are likely to recur. Mem. Op. at 2 [ECF No. 17]. The declarations and evidence supporting the Plaintiffs’ renewed motion for preliminary injunction easily satisfy this standard. They have shown that limitations on in person access ordered with no explanations or invalid explanations in the few instances where reasons were even given to observers, while not occurring in each immigration proceeding, are nonetheless common, widespread and continuing, making their recurrence likely in the absence of injunctive relief. And they have similarly shown that denials of public access to immigration court

proceedings and hearings held over Webex are also widespread and made in violation of the Defendants' own sworn admissions—made in another case in the U.S. District Court for the Southern District of New York—that proceedings using Webex may only be closed to the public based on the same limited exceptions to open proceedings applicable to proceedings held in person. Each year, according to EOIR's own statistics, hundreds of thousands of immigration hearings are conducted over Webex. The failure to allow public and press access to these Webex hearings violates binding federal regulations and the U.S. Constitution's First Amendment.

The Court also finds that Plaintiffs are likely to succeed on alternative Counts II and III of their Amended Complaint.

Defendants have previously represented that they have not changed their policy governing public access to immigration court proceedings using Webex. That representation, however, is inaccurate. The declarations and evidence submitted by Plaintiffs clearly shows that, beginning in 2025 and continuing into 2026, including up to the present time, Defendants—through their policies and directives—have intentionally and deliberately excluded the public and the press from Webex hearings around the country. Also, as recently as last month, Defendants submitted a sworn declaration of John Burns, a New York City-based Assistant Chief Immigration Judge in another proceeding, confirming that under existing federal regulations the public has the same right to access immigration proceedings via Webex as observers attending proceeding held exclusively in person and are subject to exclusion only under the same explicit exceptions appliable to in person proceedings. Ex. 75. Another sitting immigration judge in New York submitted a similar declaration. Ex. 74.

In the United States, immigration courts have long been presumptively open to the press and the public, with a predecessor regulation to 8 C.F.R. § 1003.27 dating back to the mid-1960s.

But, notwithstanding this longstanding history and tradition of presumptively open access, including judicial interpretation of a prior federal regulation finding a violation of it (resulting in exclusion of members of the public) to be an abuse of discretion, *see Pechter v. Lyons*, 441 F. Supp. 115 (S.D.N.Y 1977), immigration judges around the country—and even in New York where Judge Burns's description of policy was circulated[3]—as well as immigration practitioners have continued to construe and perceive the previously mentioned "Fact Sheet" as a change in policy (*see* n.1 *supra*). The 18,000-member American Immigration Lawyers Association has, in fact, described the Fact Sheet as "including a ban on all virtual observations."[4] The law is clear, however, that immigration judges do not have the discretion to deviate from the binding federal regulations (8 C.F.R. § 1003.27 and 8 C.F.R. § 1240.10(b)), which make immigration courts presumptively open to the press and the public.

Moreover, to the extent that the government has changed its policy and announced and directed, through its officials, that immigration courts utilizing Webex are no longer required to be open to the press and the public, there has been no notice-and-comment rulemaking to change or repeal the applicable regulations, *i.e.*, 8 C.F.R. § 1003.27 or 8 C.F.R. § 1240.10(b). That itself violates the APA because the government has not observed the required procedure to change or repeal those regulations. When a rule or regulation has been adopted after prior notice and comment, as was the case with the applicable regulations,[5] the rule or regulation may only be repealed, replaced or modified after affording the public the same opportunity for prior notice and

---

[3] Declaration of Janine Silver, Ex. 76, ¶ 8.

[4] *EOIR Releases Fact Sheet on Observing Immigration Court Hearings*, AILA Doc. No. 26030600 (Feb. 17, 2026), https://www.aila.org/library/eoir-releases-fact-sheet-on-observing-immigration-court-hearings.

[5] *See* 52 Fed. Reg. 2931 (1987).

comment. *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 101 (2015). Consequently, the Plaintiffs have shown a likelihood of success on alternative Count II.

The Plaintiffs have also shown a likelihood of success on alternative Count III. Even if prior notice and comment procedures were not required to modify or repeal 8 C.F.R. § 1003.27 or 8 C.F.R. § 1240.10(b), when an agency changes its policies it must both (1) acknowledge the changes and (2) offer "good reasons for the new policy." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). Here, the government has not acknowledged the change in policy or offered reasons for the policy change, all in violation of the APA. The U.S. Constitution's First Amendment and the common-law tradition in the United States likewise establish that courts, including immigration courts, are open to the public and that the public has a right to observe court proceedings. *See supra*. Consequently, AHR has shown a likelihood of success on alternative Count III.

**Likelihood of irreparable injury**

The ongoing limitations placed on Plaintiffs and the ability of court observers to carry out immigration court observation work have violated Plaintiffs' First Amendment rights, a form of irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (recognizing that it has long been established that the loss of constitutional freedoms, "for even minimal periods of time, unquestionably constitutes irreparable injury"); *see also Am. Bar Assoc. v. U.S. Dep't of Just.*, 783 F. Supp. 3d 236, 247 (D.D.C. 2025) ("By establishing a likelihood of success on the merits of its First Amendment claims, the ABA has established it will suffer irreparable harm in the absence of preliminary relief."). Irreparable harm to the Plaintiffs has been shown, and there is also the likelihood of continued irreparable harm in the absence of preliminary relief.

**Balancing of the equities and the public interest**

Because the federal government, through the official acts of its officials, is the defendant, the balance of equities between the parties merges with the question whether the requested injunction is in the public interest. *Neguse v. U.S. Immigr. & Customs Enf't*, ___ F. Supp. 3d ___, 2025 WL 3653597, at *8 (D.D.C. Sept. 17, 2025). As to the government's interest, there is "generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). Conversely, there is a strong public interest in having government agencies abide by their own regulations and there is an inviolate government duty not to impede the First Amendment rights of the press and public to observe court proceedings. *Detroit Free Press, supra,* 303 F.3d at 711; *see also Pechter v. Lyons*, 441 F. Supp. 115 (S.D.N.Y 1977) (determining it was an abuse of discretion for an immigration judge to exclude the public from an immigration court proceeding).

This Court further finds that the federal government's violations of the Administrative Procedure Act and the First Amendment in impeding and restricting press and public access to the immigration courts of the United States, as shown by the Motion, the declarations and the evidence, and the entire record herein, are not only ongoing and recurring up to the present time but capable of repetition and evasion by the federal government and its officials. In such circumstances there is a compelling need to safeguard against further violations of the Administrative Procedure Act, binding federal regulations guaranteeing presumptive public and press access, and the First Amendment. *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 243 (2024) ("In all cases, it is the defendant's 'burden to establish' that it cannot reasonably be expected to resume its challenged conduct—whether the suit happens to be new or long lingering, and whether the challenged conduct might recur immediately or at some more propitious moment.").

This Court further finds that simply directing Defendants to comply with their own regulations pending the completion of proceedings, while necessary, is insufficient to protect the rights of Plaintiff and that additional safeguards are necessary;

This Court further finds that in public interest cases such as this either no bond or only a nominal bond is appropriate when the risk of harm to the government is non-existent or remote, as it is here. *See, e.g.*, *P.J.E.S. ex rel. Escobar Francisco v. Wolf*, 502 F. Supp. 3d 492, 520 (D.D.C. 2020) (noting that the court has "the discretion to require no bond at all," and finding that where a plaintiff was "seeking to vindicate important rights under the immigration laws" that "the Court will waive the requirement for an injunction bond") (internal quotations omitted).

It is therefore

**ORDERED** that Plaintiff's Motion for Preliminary Injunction and Stay[6] is **GRANTED**; and it is further

**ORDERED** that Defendants, their officers, agents, representatives, servants, employees, the immigration judges under their supervision, and attorneys, and all other persons in active concert or participation with them, are hereby **ENJOINED** from:

(1) Restricting or denying public and press access to immigration court proceedings or hearings, including access to waiting areas outside the immigration courtrooms, in violation of 8 C.F.R. § 1003.27, 8 C.F.R. § 1240.10(b), and the Immigration Court Practice Manual;

(2) Implementing blanket closures of immigration court proceedings or hearings, whether conducted in person or via Webex or through other means, to the public or the press, absent

[6] Under section 705 of the Administrative Procedure Act "a reviewing court . . . may issue all necessary and appropriate process to postpone the effective date of an agency action *or* to preserve status or rights pending conclusion of the review proceedings." (emphasis added).

compliance with the procedures and limited exceptions set forth in 8 C.F.R. § 1003.27 and in this Order;

(3) Closing any immigration court proceeding or hearing to the public or excluding any member of the press or the public from attending any such immigration proceeding or hearing, whether that proceeding or hearing is to be conducted in person, over Webex, or by any other means, unless the presiding Immigration Judge first affords the press and the public a meaningful opportunity to be present at the hearing or proceeding, states on the record in each case in which a hearing is closed to the public (with such statement to be recorded on video or audio and to be documented via written transcription to be contemporaneously made) and before closing the proceeding or hearing to the public:

> (a) The specific legal basis asserted for any closure of, or exclusion from, the immigration proceeding or hearing (or any portion thereof), with specific citation to any assertedly applicable legal authority; and
>
> (b) How any exclusion or limitation has been narrowed to ensure that it is no broader than necessary to meet the stated basis for the exclusion or limitation;

(4) Closing any proceeding or hearing to the public or excluding any member of the public or the press from such proceeding or hearing, without first (a) offering attendees at such hearing, including the press, any court observer, or any other member of the public, a meaningful opportunity to be present and to state any objection or objections they may have to the proposed closure or exclusion and (b) providing a contemporaneously transcribed response on the record, to be recorded via video or audio, explaining the asserted reasons, with citation to legal authority, for rejecting any such objection or objections;

(5) Placing unreasonable or unlawful conditions on attendance by the public or the press to any immigration court proceeding or hearing, including but not limited to conditioning access on an attendee's agreement to remain present for the entire proceeding or hearing or be barred reentry, barring the public from note taking during a proceeding, inhibiting or restricting the ability of members of the public or the press from accessing immigration court proceeding or hearings (whether conducted in person, via Webex, or via another other means) in which the public and the press have a right to attend, or inhibiting or restricting the ability of members of the public and the press from making objections prior to the closure of any immigration proceeding or hearing or entering or using the hallways or other waiting areas outside immigration court courtrooms or any other place where immigration court proceedings or hearings open to the public and the press are held (whether such proceedings or hearings are conducted in person, via Webex, or by any other means);

and it is further

**ORDERED** that the officers in charge of the Department of Justice, the Executive Office for Immigration Review, and the Office of the Chief Immigration Judge, as well as the Assistant Chief Immigration Judge who oversees immigration judges at the Fort Snelling Immigration Court, as well as the immigration judges under their supervision and any federal government's agents, servants, employees, representatives, and attorneys with any duties or responsibilities relating to the U.S. immigration courts and/or public and press access to immigration court proceedings or hearings, shall comply with 8 C.F.R. § 1003.27, 8 C.F.R. § 1240.10(b), and the Immigration Court Practice Manual; and it is further

**ORDERED** that this Preliminary Injunction and Stay shall be immediately communicated to all United States Immigration Judges and be provided at trainings for any new or prospective United

States Immigration Judges and shall remain in effect until a final judgment is entered in this action or until further order of this Court; and it is further

**ORDERED** that, pursuant to Federal Rule of Civil Procedure 65(c), Plaintiffs are directed to post a nominal bond in the amount of $1.00.

**SO ORDERED.**

Dated: ________________

______________________________

**UNITED STATES DISTRICT JUDGE**