**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| THE ADVOCATES FOR HUMAN RIGHTS, et al. | ) ) ) ) | |
| *Plaintiffs*, | ) ) ) | |
| v. | ) | Civil Action No. 1:26-cv-00865-RC |
| TODD BLANCHE, IN HIS CAPACITY AS ACTING ATTORNEY GENERAL OF THE UNITED STATES DEPARTMENT OF JUSTICE, et al. | ) ) ) ) ) | **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR RELIEF FROM LOCAL RULE 7(n)** |
| *Defendants*. | ) ) ) ) ) ) ) | |

Plaintiffs respectfully submit this response to Defendants' Motion for Extension of Time (ECF No. 32), which seeks waiver of the requirement under Local Rule 7(n) that the government file a certified list of the contents of an administrative record simultaneously with the filing of Defendants' Rule 12(b) motion to dismiss. Plaintiffs agree with Defendants that this Court has granted waivers of Local Rule 7(n) where a certified index of record is not necessary to dispose of a motion to dismiss. *See, e.g.*, *Connecticut v. U.S. Dep't of the Interior*, 344 F. Supp. 3d 279, 294 (D.D.C. 2018). And, for the reasons stated in Plaintiffs' forthcoming response to Defendants' motion to dismiss, this Court has ample basis to *deny* Defendants' 12(b)(1) and 12(b)(6) motions without resort to the administrative record.

1

Plaintiffs have submitted sufficient evidence in their Renewed Motion for a Preliminary Injunction or Stay to warrant the relief requested therein. To the extent that the Court is inclined to grant a preliminary injunction to ensure public and press access to immigration courts (as the U.S. District Court for the Southern District of New York recently did in the *Arias* case in New York),[1] the immediate production of the administrative record would have less urgency. Of course, the administrative record must be produced in any event as both Plaintiffs' renewed motion for preliminary injunctive relief and their Amended Complaint's request for permanent injunctive relief would remain pending.

But Plaintiffs cannot agree that Defendants' motion to dismiss can be *granted*, much less granted without the Defendants providing Plaintiffs and the Court access to the full administrative record. Producing the administrative record is the general rule, as Local Rule 7(n) itself makes clear, and the production of the administrative record is "a routine—indeed, necessary—step in cases challenging agency action." *Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, No. 22-CV-35 (CRC), 2025 WL 833075, at *7 (D.D.C. Mar. 17, 2025). And, while in abstract it is possible to grant a defendant's motion to dismiss an APA case before the index of record is produced, that is not the case here for several reasons.

**Baton Rouge court closures**

Consider first Plaintiffs' Amended Complaint, *as described by Defendants*, regarding denial of access to observers at the immigration court in Baton Rouge, Louisiana. Plaintiffs and others have been excluded from *all* Baton Rouge merits hearings that they have tried to attend and have been told "that the immigration judges of this court do not permit observation of merits

---

[1] *Arias, et al. v. U.S. Immigration and Customs Enforcement, et al.*, 2026 WL 1785997 (S.D.N.Y. June 22, 2026).

hearings." ECF No. 31-1 at 18. In response, Defendants have offered a new declaration from the Assistant Chief Judge for that court asserting that there is "no categorical policy at the Baton Rouge court against public observers attending merits hearings." *Id*. The Plaintiffs' declarations, they argue "are wrong" (*id.* at 29) and "do not accurately state the court's policy regarding public access to hearings." (*Id*. at 28). Defendants tellingly do not dispute that Plaintiffs and other observers for Mision Migrante (*see* ECF No. 23-1 at 1) have regularly been turned away as claimed. *See* Exs. 32, 33, and 38; ECF No. 23-1 at 89–94, 125–27. But that is plainly the impression Defendants intend to leave, particularly by including the immigration judge's declaration that "sometimes members of the public *may* be unable to attend hearings where the courtroom does not accommodate the number of visitors that seek admission." ECF No. 31-1 at 19 (emphasis added). On *this* basis—and with no administrative record that would contradict Plaintiffs' declarations— Defendants maintain that Plaintiffs have not shown "either a consistent practice, always followed by all officers, or an official policy prescribing that practice." *Id*.

Defendants are correct that a district court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." ECF No. 31-1 at 11 (citations omitted). They cannot use declarations as they have, however, to rebut factual allegations contained in the complaint. When deciding a motion to dismiss under Rule 12(b)(1), the court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged, and upon such facts determine [the] jurisdictional questions." *Am. Nat. Ins. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks omitted).

It is also at best questionable whether Defendants' motion to dismiss with respect to in-person closures at Baton Rouge can even be considered under Rule 12(b)(1) rather than as a failure

3

to state a claim under Rule 12(b)(6). Defendants dispute Plaintiffs' Amended Complaint that they have been consistently denied access to merits hearings without explanation and assert that this is a jurisdictional question, ECF No. 31-1 at 19, while elsewhere claiming that these same allegations "fail to satisfy the final agency action requirement as to Baton Rouge." *Id*. at 28.

That's significant for two reasons. As the D.C. Circuit and this court have held, whether the action complained of constitutes final agency action is *not* a jurisdictional issue subject to a Rule 12(b)(1) motion. *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 183–85 (D.C. Cir. 2006); *Ramirez v. U.S. Immigr. & Customs Enf't*, 338 F. Supp. 3d 1, 40 (D.D.C 2018) ("the 'final agency action' requirement is not jurisdictional, but instead determines whether a plaintiff has a cause of action under the APA") (citations omitted). And, in circumstances where a defendant maintains that a complaint fails to state a cause of action under Rule 12(b)(6) a court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which we may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997). It may not consider declarations like that offered by the Defendants in their motion.

But even assuming Rule 12(b)(1) is applicable, consideration of the declaration without also considering the whole administrative record would be fundamentally unfair and contrary to the purpose of Local Rule 7(n). The administrative record would likely show whether the declaration was accurate. The consistent closures were long known to the immigration court at Baton Rouge and to EOIR. Exhibit A to Mr. Quigley's declaration (ECF No. 23-1, Ex. A at 128) is an October 25, 2025 administrative complaint submitted to the Attorney General and EOIR asking them to "investigate the Baton Rouge Office of Immigration Hearings for its illegal practice of denying members of the public access to hearings" and to "order them to comply with the

4

requirement of public access to all proceedings allowed by law." *Id*. at 129. Mr. Quigley points out that the complaint was met with silence by EOIR (ECF No. 23-1 at 126), that the denials of access continued unabated (ECF No. 23-1, Ex. C at 135–42), and that an attorney representing immigrants in that court had "confirmed the routine denial of access in that court[]" (ECF No. 23-1 at 127).[2] The correspondence, the closures, and their frequency would all be confirmed by the administrative record. That record might also contain correspondence between EOIR and the Baton Rouge judges that might well contradict the Defendants' declaration.

**The ban on observer access to hearing held via Webex**.

Defendants also move to dismiss Plaintiffs' claim that EOIR has either (1) violated its own longstanding practice subjecting closure of immigration court hearings held via Webex to the same limitations found in 8 C.F.R. §1003.27 applicable to hearings held in-person by telling immigration judges that Webex access was limited to parties, or (2) had unlawfully changed that longstanding policy and practice without explanation and without first affording the public an opportunity for prior notice and comment. These claims, Defendants maintain, have become partially moot, *i.e.*, at least as to denials of remote access when there is no in-person option. ECF No. 31-1 at 31.

---

[2] As Plaintiffs will discuss in more detail in their forthcoming response to the Motion to Dismiss, even where Rule 12(b)(1) applies "a court 'assume[s] the truth of all material factual allegations in the complaint," and must "'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Ramirez, supra*, 338 F. Supp. 3d at 21. Given the Defendants' knowledge of complaints about closures at Baton Rouge, its silence despite their long, ongoing nature, it is reasonable to infer that these closures weren't the spontaneous decisions of individual judges. If EOIR officials and immigration judges were serious about ensuring public and press access to immigration courts, as the law requires, EOIR would have immediately rectified any known violations of 8 C.F.R. § 1003.27 and 8 C.F.R. § 1240.10(b).

CORE/3515279.0007/245570559.2

Defendants' support for this mootness claim? They cite to what they alternatively call—*within the same paragraph*—both "clarifying guidance"[3] and a "new policy" regarding Webex access that they say "moots Plaintiffs' challenge to the purported prior policy." ECF No. 31-1 at 22. To describe this as confusing is an understatement. The prior policy did not limit Webex participation to parties. *See, e.g.*, Ex. 38; ECF No. 23-1 at 106 ¶ 11; Ex. 32; ECF No. 23-1 at 86 ¶ 14). Nor did the agency's access policy distinguish between Webex hearings held in part over Webex and those held solely over Webex. Earlier in the Defendant's own motion to dismiss, in fact the agency describes the same "purported prior policy" as follows:

> When EOIR established its Headquarters Immigration Court in 2004 to conduct remote hearings via video-conferencing, EOIR specifically addressed public access to that court's video conferencing hearings, stating that such access was "governed by the provisions of 8 CFR 1003.27 in the same manner as on-site, in-person hearings." Fact Sheet, EOIR Headquarters Immigration Court (July 21, 2004).

As Plaintiffs explain in more detail in their forthcoming response to the motion to dismiss, the Defendants' longstanding policy,[4] reflected in the 2004 Policy Statement and reiterated less

---

[3] Couching the new June 2026 Fact Sheet as "guidance" rather than new policy would allow the Defendants to skirt the requirement that a change in policy from that reflected in 8 C.F.R. §§ 1003.27 and 1240.10(b) and the agency's consistent practice prior to 2025 could not be adopted without first going through the APA's notice and comment procedure. *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92 (2015). But, as Plaintiffs will discuss in more detail in their answer to the motion to dismiss, this new "clarification," contradicting declarations it submitted to the Southern District of New York only in May 2026 (*see* Ex. 75, ECF No. 45), would get no deference from the court. *See Christopher v. Smithkline Beecham Corp.*, 567 U.S. 142, 154 (2012) (agencies get no deference to interpretations of their own regulations if (1) they conflict with a prior interpretation, (2) the interpretation is "nothing more than a convenient litigating position" or (3) the interpretation constitutes *post-hoc* rationalization) (internal quotation marks omitted).

[4] *See* Ex. 32, ECF No. 23-1 at 86 ¶ 14 ("Historically, Immigration Judges were advised that Webex hearings were to be conducted to the same specifications as in-person hearings."); Ex.38, ECF No. 23-1 at 110 ¶ 15 ("[T]he recent practice of excluding observers from detained hearings conducted via Webex is a departure from longstanding practice.").

than two months ago in declarations submitted to the federal district court for the Southern District of New York,[5] draws no distinction between Webex hearings (whether partial or wholly over Webex) and hearings held in-person for purposes of closure—the same limited exceptions to openness (8 C.F.R. § § 1000.27 and 1240.10) apply. EOIR's own statistics do not distinguish between hearings held exclusively over Webex and those in which one or more participants may participate in person. *See* ECF No. 24 at 19. These facts notwithstanding, Defendants maintain that Plaintiffs' claim regarding Webex access *where there is no in-person* option is now moot because they have either clarified or changed their policy so that Webex access is not available to the public unless the hearing is conducted entirely via Webex. And even then, attendance by observers is arbitrarily limited to twenty persons. *See* ECF No. 30-2 at 9. Yet the Webex software given to immigration judges can accommodate 1000 visitors and up to 300 persons in the virtual waiting rooms. *See* Ex. 47; ECF No. 23-1 at 181 ¶ 9; *see also* Webex Help Center, *View the Maximum Participant Limits for Your Website* (Dec. 23, 2025), https://help.webex.com/en-us/article/h00r1p/View-the-maximum-participant-limits-for-your-Webex-site.

This is a strange definition of mootness since it amounts to an admission that, contrary to longstanding policy the agency is, in fact barring public Webex access in every instance as long as a single participant is located in an immigration courtroom, even if that courtroom is in an inaccessible detention facility and the only person physically present is the respondent. But even on its own terms, this "new policy" or "clarifying guidance"—issued the day before Defendants'

---

[5] *See* Ex. 75, ECF No. 45 at 431 ("For *any* hearing conducted by Webex, keep the Webex session open and unlocked unless the respondent has requested a closed hearing.") (emphasis added); *see also* ECF No. 45 at 429–30 (noting that "[s]ubject to the same regulations [applicable to in person hearings] . . . the general public can also observe hearings conducted remotely by joining the remote hearing").

CORE/3515279.0007/245570559.2

motion to dismiss—cannot form the basis for a mootness claim in the absence of the record, which would likely demonstrate that, far from mooting the Webex access issue,[6] the new Fact Sheet has exacerbated it.

## CONCLUSION

Plaintiffs previously asked Defendants to begin a discussion about what constitutes the record in this case, regardless of the outcome of Defendants' motion to waive Local Rule 7(n). To hasten progress toward that end — and to follow up on a question previously posed by the Court whether Plaintiffs had submitted a FOIA request to Defendants, Plaintiffs have since done so.[7] Plaintiffs do not doubt that preparing an index of the record will involve significant effort. If the Court grants Defendants' waiver request, Plaintiffs urge the court to concurrently order Defendants to begin assembling the record if they have not already done so and to coordinate with Plaintiffs.

---

[6] Defendants note that in this court's ruling on AHR's motion for preliminary injunction, it had "failed to develop any argument that denial of remote attendance is unlawful, at least where there is an in person option." ECF No. 31-1 at 5. But Plaintiffs' Amended Complaint and Renewed Motion for Preliminary Injunction do just that. We point to the fact (1) that the original regulation drew no distinction in the application of §1003.27 to closures of hearings held over Webex and in-person, (2) that the rule remained unchanged when Congress had subsequently authorized the use of remote hearings as a substitute for in-person hearings, and (3) that the agency's consistent practice was to keep both types of proceedings open, with no requirement that to attend a hearing via Webex, no in-person option had to be available. *See generally* Renewed Motion for Preliminary Injunction, ECF No. 24. The new Fact Sheet limiting Webex access solely to parties except where no in-person option is available is both (1) a fundamental change to the existing regulations as historically applied and (2) improperly implemented without prior notice and comment.

[7] As part of its FOIA submission to the agency, AHR sought expedited processing on grounds that the request addressed issues of significant public interest, a request the agency denied. AHR has since sought judicial review of that denial before this court. *See Advocs. for Hum. Rights v. Blanche*, Case 1:26-cv-01858-RC, ECF No. 1 (filed May 29, 2026).

CORE/3515279.0007/245570559.2

Dated: July 2, 2026

Respectfully submitted,

STINSON LLP

*/s/  Katie Parnow*
Harvey Reiter, No. 232942
John Bessler, No. 433163
Brandon Nagy, No. 1024717
Katie Parnow, No. 90041785
1775 Pennsylvania Ave, N.W., Suite 800
Washington, DC 20006
Tel. (202) 728-3016
harvey.reiter@stinson.com
john.bessler@stinson.com
brandon.nagy@stinson.com
katie.parnow@stinson.com

9

CORE/3515279.0007/245570559.2